Okay, our next case for argument is Central States v. McClain, Appeal No. 25-2727. Mr. Lee, whenever you're ready. Good morning. May it please the Court, Charles Lee on behalf of the appellants. As pertinent to this appeal, Arkansas Rule 128 has two main components. The first component is called the Dispensing Fee Requirement, and the second is called the Reporting Requirement. We submit that both requirements are preempted by ERISA, because they regulate central matters of plan administration and interfere with National Uniform Plan Administration. I'm going to address the Dispensing Fee Requirement first. And what are the... Could I ask you, Mr. Lee, excuse me, but could I ask you to address first the question, and I hope the defense will address this as well, whether those two sets of requirements are severable? If they're severable from the entire rule? From one another. I think they can be. If you were to strike down the reporting requirement and restructure it in a way that doesn't raise preemption issues, then, yeah, I think they could be severable. As adopted in Rule 128? Yes. Okay. Thank you. The Dispensing Fee Requirement basically says that once a plan submits the pharmacy compensation information to the commissioner, the commissioner will then review that to determine whether the compensation is fair and reasonable to ensure an adequate pharmacy network. We submit that there is one major problem with that, and that is that the Dispensing Fee Requirement impermissibly allows the commissioner to dictate how the cost-sharing terms are set forth in the plan. Specifically, Rule 128 says that if a higher dispensing fee is required, that the plan cannot assess a separate Arkansas fee. Rather, if the plan wants to recover that, they have to then amend the terms of the plan and provide for a higher copay or higher coinsurance. Cases such as Mulrady in the Tenth Circuit and a recent Sixth Circuit decision in McKee clearly state that if a state law attempts to regulate the cost-sharing terms of a plan, that state law is preempted. How do you differentiate that from the kind of rate regulation that Rutledge allowed? I understand that the Sixth and Tenth Circuits have said what they've said, but Rutledge seems to be pretty permissive in this area. Rutledge involved an Arkansas law called Act 900. Act 900 was a pure rate regulation, which set forth the minimum amount that PBMs had to reimburse pharmacies for. The difference between Act 900 and Rule 128 is that, one, Act 900 regulated PBMs. It didn't regulate the health plans. Rule 128 does that. It directly regulates health plans. Second, as I mentioned, Rule 128 has restrictions on what you can do to recover the higher dispensing fees. In particular, it prohibits the plan from assessing Arkansas-specific fees and requires that you modify your cost-sharing terms. Act 900 did not address anything like that at all. Act 900 also did not have a reporting requirement. Rule 128 does. In our view, the two laws are completely different. But as to the dispensing fee, take the dispensing fee and the reporting requirement separately, as I think you are, right? The dispensing fee, how does it do anything other than increase costs, just as they were talking about in Rutledge? No, I would respectfully disagree with that. It certainly would have the effect of increasing costs. But what it also does is it dictates to the plan how the plan can recover those costs. Yeah, you can't label it as this fee or that fee, but you can pass the costs on. You can, but it goes to matters of plan administration and dictating how you recover that. In particular, it's saying that if you want to recover it, you can't assess an Arkansas-specific fee. You have to go ahead and change terms of a plan to allow for higher co-pays or coinsurance. So that effectively requires the plan to make an Arkansas-specific plan. Where do you get that out of the text of 128? Just help me understand that, please. Right, so Arkansas 128 specifically says that if there is a higher dispensing fee that's assessed, that the plan cannot try to recover that cost other than by allowing for higher co-pays or coinsurance. In the documents, yeah. So that effectively means that if a higher dispensing fee was assessed, the fund would have to create a separate Arkansas plan. As it stands now, the fund has a plan that covers employees and individuals throughout the nation, and they have a uniform set of co-pays and coinsurance. If this dispensing fee requirement is allowed to stand, what it would eventually require is for the fund to create a separate Arkansas plan, and that's not something that ERISA contemplates. ERISA's objective is to allow for uniform plan administration throughout the United States and requiring the plan to create a specific Arkansas plan would defeat that objective. And we're not talking just about Arkansas here. We're talking about 50 other states. The other states could also impose similar requirements, and that would totally frustrate Congress's goal of providing for national uniform plan administration, and it would make it really incredibly burdensome and difficult for multinational plans like the fund because we cover 500,000 participants and individuals throughout the United States and requiring us to become familiar with the laws of the 50 states and being familiar with it, complying with it would be incredibly burdensome, and that's just something that Congress did not want to impose on ERISA plans. But the Supreme Court is telling us that state-specific rate regulation is permissible, right? In Rutledge, the court said that cost regulation is permissible. And that could produce variations from state to state in terms of your plan's ability for co-pays, deductibles, etc., to cover the relevant costs of providing services and products, right? Well, it wouldn't require us to adjust the co-pays or co-insurance. It might mean that we have to pay higher for certain drugs in certain states, but it wouldn't require us to alter the terms of the plan. It might give you a strong incentive to do so. The state-to-state variations in rates, right? Yeah, I mean, and I guess that goes to what Rutledge said, is that even some types of cost regulation could be preempted by ERISA if it forces plans to adopt a certain scheme of coverage or forces them to act in a certain way with respect to the plan document. And so, yeah, if a cost regulation would require the plan to alter the terms of the plan, then, yeah, I would say that it would be preempted by ERISA. Can I ask you a procedural question, Mr. Lee? Yes. If we were to agree with you on all or part of the district judge's dismissal order, what would the appropriate next steps be? Would it be a try? Would it be you move for summary judgment in the district court or what? I'm hoping that it would be a reversal with the instruction that Rule 128 is preempted by ERISA. Did you move for that? Excuse me? In the district? Did you move for final judgment in your favor in the district court? No, this comes out via a motion to dismiss. Exactly. So if we set aside the motion to dismiss, we would remand to the district court for further proceedings. What would those look like? I think we would probably move then towards summary judgment. Thank you. I wanted to address the reporting requirement. Do you want to save time for rebuttal or would you rather address that? I just don't want you to use it. You're in your rebuttal time, at least is what you told us. Okay. You've convinced me. I'll save my rebuttal time. I frankly think we ought to hear it, if you'll excuse me. But this is part of your case. And the reporting requirement looks a lot. Well, just tell me why it doesn't pass muster is incidental. If we were to agree that the fee is permissible. Yeah. You know, in go bill, the court indicated that. State laws that have a reporting requirement might be okay. If the reporting is incidental to the law. And the example that the court cited to was a very limited case where the state had imposed a tax. And it required reporting by plants and other parties in order for the state to determine the tax and to enforce the tax law. So that is what the court indicated was incidental. And, you know, cases such as the six circuits decision Snyder is also very similar to the Bono case that the Supreme court cited here. We're not talking about a neutral law that imposes a tax and reporting is required to determine the tax. We're talking about a reporting requirement and annual reporting requirement where plans are required to submit a submission,  a large amount of data on an annual basis. It's not incidental to rule one 28. Isn't the purpose of that to determine what the fair and reasonable fee would be.  Right. It was that different than I'm filing a tax return to figure out what taxes. Right. Well, I mean, it it's for them to assess whether it is fair and reasonable to ensure an adequate network. It's just not to me just a simple of here a simple method of just saying we're going to use that information and then we're going to assess it. This is we're going to use that information. We're going to first look at whether it's fair and reasonable and whether it the reporting is not incidental. It's a main part of that rule. Without it. There's no way that the dispensing fee requirement can hold up. And the fact that the purpose of the reporting requirement, I don't think it's this positive. I think the Gobeil case makes it clear that you look to Arisa's objectives and which is and it was to provide for Nashville National Uniform Planning Administration. And you look to the effect on the plant, the state's law on the plant here. There is a step substantial burden on the plan to comply with the reporting requirement. And again, this is not a case where it's just we're looking at Arkansas. We're considering what happens outside of Arkansas. And so if you consider that it would be a huge burden on plans. If states such as Arkansas impose separate reporting requirements. Did you also address our question about the new federal legislation?  So Section 726 of Arisa was recently enacted. And basically what that section provides is that PBMs have to report certain information to the group health plans. And the purpose of that based on the title of the section is to provide for PBM oversight. What that clearly indicates to us is that it reinforces that Congress intended for PBM oversight to be a something that should be managed by the health plans first and that the information pertaining to the PBMs should be reported to the health plans. I would also note that prior to 726, Congress had enacted Section 725 Arisa. And that provision pertains to prescription drug reporting by health plans. So to me, when you combine 725 and 726 together, it clearly indicates that Congress intended for prescription drug spending and PBM oversight to be a federal concern. And not something where the states can intervene and impose their additional requirements on it. And so therefore, we think that the passage of 726 clearly indicates that the reporting requirement is preempted by Arisa. Thank you. Okay. Thank you, Mr. Lane. Okay, Ms. Patterson. Good morning and may it please the court. Plaintiffs have failed to overcome the presumption that Congress does not intend to supplant state laws and regulations. And this presumption applies even in the Arisa context as the Supreme Court's opinion in Travelers and DiBuono make clear. Plaintiffs concede that Rule 128 is not preempted under the reference to preemption test. So that leaves them just with the impermissible connection test. But they fail here too. Rule 128 is a cost regulation that is not preempted by Arisa. And its enforcement mechanisms do not change that conclusion. Just like Act 900's enforcement mechanisms did not change the Supreme Court's conclusion that Act 900 was a cost regulation in Rutledge versus Pharmaceutical Care Management Association. Plaintiffs attempt to gloss over Rutledge, but that case controls here. Like the law issued there, Rule 128 regulates pharmacy reimbursements and is a cost regulation that does not have an impermissible connection with Arisa. Like Act 900, Rule 128 regulates PBMs. Plaintiffs dispute this, but their reply brief ignores all of the citations on page 29 and footnote 4 of defendant's brief that show this is the case. Indeed, violations of Rule 128 are subject to fines or penalties under Arkansas Code Section 23-92-508, which applies only to PBMs. Plaintiffs similarly ignore that Act 900 had enforcement mechanisms. They keep referring to it as a pure rate regulation. The fact is the Supreme Court recognized that's what it was at its heart, but discussed the enforcement mechanisms, which PCMA argued throughout its brief and at oral argument that those enforcement mechanisms directly affected central matters of planned administration and interfered with nationally uniformed planned administration. But the Supreme Court rejected that argument and still concluded it was a permissible rate regulation. The same is true here. There, the enforcement mechanisms were threefold that the Supreme Court discussed. One, it required, it tethered reimbursement rates to acquisition costs and required timely updates of the MAC list, the maximum allowable cost list, where pharmacies, excuse me, PBMs had to provide pharmacies with a list and had to update it with frequent intervals. So it had this sort of record-keeping disclosure requirement, and yet the Supreme Court still said it wasn't preempted. And there, PCMA argued that this would make uniformed planned administration impossible, noting that at the time, there were 40 state laws that required different update schedules, and the Supreme Court still said it was a permissible rate regulation. The second enforcement mechanism there was requiring PBMs to provide an administrative appeal procedures and that they had to allow pharmacies to reverse and rebuild each reimbursement claim. And again, they pointed out that there were multiple state laws with different appeal procedure requirements, 37, and that did not change the Supreme Court's conclusion. And then the third enforcement mechanism was that the law required PBMs and to permit pharmacies to decline to dispense. So despite those enforcement mechanisms, the Supreme Court still concluded that Act 900 was not preempted, reasoning that not every state law that affects an ERISA plan or causes some disuniformity in planned administration has an impermissible connection with an ERISA plan. The same thing... Patterson, could you address, please, the plaintiff's point about Rule 128 including these prohibitions on changing or adding on charges to account for the dispensing fee as affecting plan design? Yes, Your Honor. Rule 128 doesn't regulate cost sharing. I think the district court got this right. The provision plaintiffs refer to merely notes that plans must adhere to their own terms and not surprise subscribers with a new fee outside of their contract. And it was indicating that PBMs could indeed pass along these costs and plans could pass along these costs, unlike some of the other laws that other circuit cases addressed. And this is reinforced by the fact that the rule is enforceable against PBMs not planned. So it does not affect planned structure or design. And moving on to the reporting requirement, this is an incidental reporting requirement. Rule 128 is nothing like Vermont's reporting regime that the Supreme Court held was preempted in Goebel v. Liberty Mutual Insurance. Indeed, in Goebel itself, the Supreme Court noted that the analysis may be different for other state laws, the enforcement of which necessitates incidental reporting. And indeed, the analysis has to be different, otherwise Rutledge would have come out the other way. As I discussed earlier, Act 900 required the timely updating of the MAC list, which is a sort of record-keeping or disclosure reporting requirement, and yet the Supreme Court held it was not preempted. And I think here the Snyder case from the Sixth Circuit and the Webby case from the Eighth Circuit is also instructive where they were analyzing disclosure requirements and they determined they were incidental to an otherwise permissible state law and so not preempted. As plaintiffs even said today, the reporting requirements in Rule 128 are necessary to enforce the dispensing fee requirement. They are therefore incidental. They're not just to amass data for its own sake, like the lot issue in Vermont. And their complaint alleges this as well in Paragraph 1 and Paragraph 9. So do you think they are not severable from one another? I think that they are not because you need that information to be able to implement the dispensing fee requirement. And the rule itself says that within 20 days of the report requirement, that's when the commissioner has to provide a decision regarding the dispensing fee cost, which I think shows that the reporting requirement is indeed incidental and necessary to the permissible rate regulation due to that close connection. And if plaintiffs were right on this argument, then states wouldn't be able to enforce any sort of regulation because they'd always require some sort of reporting requirement. This is not a case where plaintiffs allege the reporting requirement is a pretext to gather all of this other information that's incidental. They even concede that it is related to the enforcement of the dispensing fee requirement. Am I understanding correctly, Counsel, that in essence this dispensing fee under Rule 28 winds up being custom tailored? It's a different fee basically for every PBM or plan or I don't know, maybe pharmacy. They would vary? The dispensing fee requirement does give the commission some discretion. However, to consider the different circumstances of that pharmacy's costs and things of that nature. However, the commissioner is not able to impose a fee that exceeds $10.50, which is the rate for Arkansas Medicaid dispensing costs. But would you expect in practice that that would be the fee across the board then? I don't know in practice how it's been. And then the complaint is devoid. We are here on a motion to dismiss. The complaint is devoid of any allegations that it has been enforced in an unfair manner or a particularly onerous manner that would require plans to tailor their plans in a certain way or anything of that nature. And so there's nothing like that here, indicating that it would be applied unfairly or arbitrarily. Could you also explain to us, please, in essence why the law that was approved in Rutledge has apparently not been sufficient to protect smaller and rural pharmacies from getting squeezed out of the market? Yes, Your Honor. So the law at issue in Rutledge went to a pharmacy's acquisition costs for drugs. So how much they were paying for the drug that they would provide. Here the concern is the dispensing costs, so the services associated with having the pharmacist and things of that nature. So it's not about the drug acquisition. It's about those other costs where the PBMs have enormous power and some of the pharmacies have not been able to receive adequate reimbursements for those costs. And I would also like to address the Consolidated Appropriations Act of 2026. I don't think that changes the conclusion that Rule 128 is not preempted by ERISA, and that's for at least three reasons. First, it doesn't change the analysis under Rutledge. As Rutledge explains, whether a state law governs a central matter of plan administration or interferes with nationally uniform plan administration is simply shorthand for the considerations courts are supposed to consider in the impermissible connection analysis. And those considerations are whether a plan requires providers to structure substantive benefit plans in a specific way, and then the Supreme Court cited Shaw, which was talking about requiring pregnancy benefits, or binds plan administrators to specific rules for determining beneficiary status. Here Rule 128 doesn't do any of those things. It does not affect the substantive coverage. It just may increase the cost of a prescription drug benefit. The second way is where there would be an impermissible connection is if there's acute economic effects that force an ERISA plan to adopt a certain scheme of substantive coverage. But plaintiffs don't argue that that even is the case here because it's not, and they made no allegations to that effect. Rule 128 doesn't do any of those things, and the Consolidated Appropriations Act doesn't change that. So the rule is not preempted regardless of the not yet effective disclosure regime in the Consolidated Appropriations Act. Second, even assuming Goebel's preemption analysis, which they describe a little differently than Rutledge, even assuming that is the analysis that courts should apply, as I've explained, the Rule 128 is completely different than the reporting regime at issue of Vermont's law, and it's an incidental reporting requirement. So it's not preempted under that test as well, even if Congress also has imposed a reporting requirement. And third, as this court's order indicated, and plaintiffs note in their reply brief, the Consolidated Appropriations Act's detailed disclosure regime doesn't even go into effect for several years, and the Department of Labor is currently engaged in rulemaking about that as well. And so it's certainly not the case. Excuse me. So the Consolidated Appropriations Act certainly doesn't preempt Rule 128's incidental reporting requirements now, and the district court was correct to dismiss the complaint that had before it. So since the incidental reporting requirements are incidental, and just to implement the rate regulation, the fact that Congress in the future is also requesting some information doesn't change the fact that Rule 128 is not preempted. If the court has no further questions, I'll rest on our briefs. Okay. Thank you, Ms. Patterson. Mr. Lee, would you like a minute for rebuttal? If you have anything to add, we'll let you do it. You're welcome. Just a couple things. Council indicated that Rule 128 regulates PDMs. Well, yeah, it does. Parts of it does. But the reason why we're here today is because Rule 128 also regulates health plans. Specifically, it requires the health plans to pay a higher dispensing fee if that's what the commissioner mandates. And it requires the health plan to comply with the reporting requirements. Those are not requirements on the PDMs. Those are requirements on the plans themselves. She also indicated that because the reporting is necessary to Rule 128, that it therefore means that it's incidental. I would argue the opposite. I would argue that because the reporting requirement is necessary means that it's not incidental. It's a key component of the rule. And so the exception that's set forth in Gobeil for incidental reporting does not apply here. She also mentioned that because Section 726 of ERISA does not take effect until 2029, means that Arkansas is free to impose this reporting requirement. That's not preemption analysis. Preemption analysis looks to whether the subject matter is preempted, not the timing. And so the fact that the Section 726 doesn't go into effect until 2029 is irrelevant. Thank you, Your Honor. Okay, thank you, Mr. Lee. Thank you, Ms. Patterson. We'll take the case under advisement.